# EXHIBIT C

**Supplemental Agreement** dated this 28th day of **December, 2018**, by and among CRE Niagara Participation Holdings, LLC (known hereinafter as "**CRE**"), CRE Bushkill Group, LLC (known hereinafter as "**CRE BG**") and Resorts Group, Inc. (known hereinafter as "**RGI**"). RGI, CRE and CRE BG are hereinafter referred to as the "**Parties**". Capitalized terms used herein but not otherwise defined shall have their respective meanings as set forth in the Participation Agreement (as defined below) or the Servicing Agreement (as defined below), as applicable.

**WHEREAS**, as applicable, the Parties hereto previously executed and remain bound by the following:
   i. "**Participation Agreement**" dated as of May 18, 2017, by and between RGI and CRE BG, a copy of which is attached hereto and incorporated herein; and
   ii. "**Servicing Agreement**" dated as of May 18, 2017, by and between RGI and CRE, a copy of which is attached hereto and incorporated herein (together with the "Participation Agreement, the "**Agreements**").

**WHEREAS** it is the express intent of the Parties that this Supplemental Agreement shall be incorporated into the terms and conditions of the Agreements.

**WHEREAS** CRE and CRE BG have requested that, pursuant to the terms and conditions of the Hypothecation Loan and Security Documents, RGI borrow Three Million Dollars ($3,000,000) from Western Alliance Bank ("WAB") on or before December 28, 2018 (the "**Borrowing**"), which Borrowing shall be secured by WAB's lien on and security interest in the Timeshare Contracts and Fairway Contracts for Deed (together known hereinafter as the "**Participation Portfolio**"), and which Borrowing shall constitute a Hypothecation Distribution Advance as defined within and governed by the Participation Agreement; and

**WHEREAS** the Participation Agreement provides that CRE, as the Holder, is entitled to receive from RGI fifty percent (50%) of any Hypothecation Distribution Advance Proceeds, and CRE's $1,500,000 portion of the aforesaid Hypothecation Distribution Advance Proceeds shall be known hereinafter as the "**CRE HDA**".

**NOW THEREFORE**, for good and valuable consideration, including but not limited to RGI paying the CRE HDA to CRE on or before December 31, 2018, the Parties hereto agree as follows:

   1. Upon receipt by CRE of the CRE HDA, CRE and CRE BG shall ensure that all collections and customer service in respect of the Participation Portfolio shall continue to be performed in Bushkill, Pennsylvania in offices provided by or maintained by or on behalf of CRE BG or its affiliates (including, without limitation, Club Exploria, LLC), in accordance with the Servicing, Collections and Enforcement Policies and Procedures which are appended to the Servicing Agreement. as Schedule 1 (the "**SC&EP&P**"). For the avoidance of doubt, the aforesaid shall continue after any engagement of Concord Servicing or any other entity to sub-service the Participation Portfolio, and shall continue

after any data conversion of the Participation Portfolio. Further, with respect to customer service, this provision shall apply only to customer service related directly to the Participation Portfolio as provided in the SC&EP&P, and this provision shall not apply to any other CRE BG or Exploria customer service, including but not limited to reservations, travel, resort accommodations, or sales and marketing.

2. Upon receipt by CRE of the CRE HDA, CRE and CRE BG shall ensure that all collections and customer service in respect of the Participation Portfolio will continue to be performed by the personnel employed by CRE BG (or Club Exploria, LLC) currently doing so as of the date of this Supplemental Agreement, under the supervision of Dennis Rogers (all such personnel, including Dennis Rogers, shall be collectively known as the "**Financial Services Department**"). All of the Financial Services Department personnel will continue in their current roles and with either their current employment benefits or with employment benefits materially equivalent to other Exploria employees engaged in similar work. Notwithstanding the foregoing, CRE BG and/or Club Exploria, LLC shall have the unilateral right to terminate any Financial Services Employee either:
   (a) for any action or inaction which constitutes fraud, gross negligence, willful misconduct, theft, poor attendance, failure to follow SC&EP&P, or other verifiable and material performance-based issues; or
   (b) to reduce the number of personnel employed in the Financial Services Department as the aggregate principal balance of the Participation Portfolio amortizes and as a result, CRE BG and/or Club Exploria, LLC reasonably believe that fewer Financial Services Department personnel are required, provided that they will use commercially reasonable efforts to retain those Financial Services Department personnel who have the best documented collections performance.

   For the avoidance of doubt, CRE BG and/or Club Exploria may terminate any Financial Services Department personnel at their sole discretion should either of the above provisions apply. In the event that neither of the above provisions apply, then CRE BG and/or Club Exploria shall obtain RGI's prior written consent before terminating any Financial Services Department personnel.

3. Upon receipt by CRE of the CRE HDA, the Participation Limit set forth in the Participation Agreement shall be reduced by One Million, Five Hundred Thousand Dollars ($1,500,000).

4. Within ten (10) business days following CRE's receipt of the CRE HDA, CRE BG shall take any action which RGI's counsel deems reasonably necessary to fully and finally transfer the five (5) Hotel Highway Occupancy Permits appurtenant to the Fernwood Hotel (copies of which are appended hereto, incorporated herein, and known hereinafter as the "HOPs") to the Jinyin Temple of Sino Esoteric Buddhism, Inc. (it being understood that RGI shall be solely responsible for the preparation and filing of the HOPs with the applicable governmental authorities); provided however, that said full and final transfer of the HOPs shall be without any cost or expenses to CRE BG or CRE, and that the transferor shall not make any representations or warranties regarding the HOPs.

5. No Party shall pay or reimburse any other Party for costs or expenses incurred in connection with the drafting, negotiating or review of this Supplemental Agreement or the HOPs, including but not limited to legal fees, accounting fees, wages and consulting fees (it being understood that the foregoing shall not serve any limitation or restriction on the last sentence of paragraph 4 above).

6. On the date when the CRE HDA is paid to CRE, the RGI shall provide to CRE the percentage which represents:

    [the then outstanding WAB Hypothecation Loan Balance attributable to the CRE HDA (initially $1,500,000)] divided by
    [the then outstanding WAB Hypothecation Loan Balance]

    This percentage shall determine the portion of the interest which RGI pays to WAB attributable to the CRE HDA, and shall be known thereafter as the "**CRE HDA Interest Percentage**". Beginning on the date that the CRE HDA is paid to CRE, and continuing until the date on which RGI's WAB Loan arising from the Hypothecation Loan and Security Documents is repaid in full, CRE shall reimburse RGI monthly in arrears for the interest RGI actually paid to WAB in the previous month), as follows:
    [Total Interest Paid By RGI under the terms and conditions of the Hypothecation Loan and Security Documents during such month] **multiplied by** [the CRE HDA Interest Percentage]. Prior to making any such application, RGI shall provide to CRE written evidence satisfactory to it of such interest that RGI actually paid to WAB in the previous calendar month, following which CRE then shall pay the requisite amount to RGI.

7. On or prior to December 31, 2018, RGI shall remit, or cause to be remitted, to CRE the CRE HDA. Provided however, in the event that WAB does not fund the Borrowing, then the foregoing shall not apply and this Supplemental Agreement shall be rendered null and void.

8. This Supplemental Agreement is and shall remain binding upon all successors and assigns of the Parties as contemplated by the Agreements, until the aggregate principal balance of the Participation Portfolio is less than One Hundred Thousand Dollars ($100,000). Notwithstanding the foregoing, this Supplemental Agreement may be terminated in writing by any Party sixty (60) days following the aggregate principal balance of the Participation Portfolio dropping below One Million Dollars ($1,000,000.)

9. The Parties hereby agree to keep this Supplemental Agreement confidential, until and unless any material dispute should arise among or between the Parties in connection therewith, at which time the Parties may disclose this Supplemental Agreement in connection with any court proceeding arising in connection with such material dispute (or at such other time and in such other manner as all Parties may otherwise agree). The Parties acknowledge that any violation of the foregoing by any Party could cause continuing and irreparable harm to the non-violating Party or Parties, for which monetary damages may not be adequate compensation. All the Parties therefore agree that if any Party violates or threatens to violate any of the restrictive covenants in this paragraph, the damaged Party or Parties shall be entitled, in addition to any other legal or equitable remedies available, to entry of an injunction, temporary and permanent, enjoining such

breach and securing specific performance of this paragraph. Notwithstanding the foregoing, the Parties shall be permitted to disclose this Supplemental Agreement to their affiliates and their respective professional advisors, as is necessary or appropriate to carry on their business, to comply with their obligations under the Servicing Agreement and/or the Participation Agreement, as required by applicable law, judicial process or court order or as required, requested or advisable to be provided to any Governmental Authority, and to current, future or potential lenders, investors, underwriters, rating agencies or potential purchasers

10. This Supplemental Agreement (and any claims or disputes arising out of or related to this Supplemental Agreement, whether for breach of contract, tortious conduct or otherwise and whether predicated on common law, statute or otherwise) shall in all respects be governed by and construed in accordance with the laws of the State of New York (including Section 5-1401 of the General Obligations Laws of the State of New York but otherwise without regard to conflicts of law principles), including all matters of construction, validity and performance, in each case without reference to any conflict of law rules that might lead to the application of the laws of any other jurisdiction. Each Party further agrees that the laws of the State of New York bear a reasonable relationship to this Supplemental Agreement and irrevocably and unconditionally waives any objection to the application of the laws of the State of New York to any action, suit or proceeding arising out of this Supplemental Agreement and further irrevocably and unconditionally waives and agrees not to plead or claim that any such action, suit or proceeding should not be governed by the laws of the State of New York. Each Party hereto hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the Supreme Court of the State of New York sitting in New York County and of the United States District Court of the Southern District of New York, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Supplemental Agreement, or for recognition or enforcement of any judgment, and each of the Parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such New York State court (or, to the extent permitted by law, in such Federal court).

11. Each Party hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Each Party hereby waives formal service of process and agrees that service of any process, summons, notice or document by U.S. registered mail to such Party's respective address set forth in the Participation Agreement or the Servicing Agreement, as applicable, shall be effective service of process for any action, suit or proceeding in New York with respect to any matters to which it has submitted to jurisdiction in accordance with the immediately preceding paragraph. Each Party irrevocably and unconditionally waives, any objection to the laying of venue of any action, suit or proceeding arising out of this Supplemental Agreement in such courts and hereby and thereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.

12. EACH PARTY HEREBY EXPRESSLY AND IRREVOCABLY WAIVES TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) DIRECTLY OR INDIRECTLY RELATING TO ANY DISPUTE ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS SUPPLEMENTAL AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

This Supplemental Agreement may be signed in any number of counterparts (including by facsimile or other electronic signature), each of which shall be an original, with the same effect as if the signatures were upon the same instrument.

**AGREED AND ACCEPTED:**

**CRE Niagara Participation Holdings, LLC**
By: CRE Bushkill Group, LLC, its Managing Member

By: _____
Name: J. Richard Budd
Title: Chief Executive Officer

**CRE Bushkill Group, LLC**

By: _____
Name: J. Richard Budd
Title: Chief Executive Officer

**Resorts Group, Inc.**

By: _____
Name: W. Andrew Worthington
Title: President

12. EACH PARTY HEREBY EXPRESSLY AND IRREVOCABLY WAIVES TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) DIRECTLY OR INDIRECTLY RELATING TO ANY DISPUTE ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS SUPPLEMENTAL AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

This Supplemental Agreement may be signed in any number of counterparts (including by facsimile or other electronic signature), each of which shall be an original, with the same effect as if the signatures were upon the same instrument.

**AGREED AND ACCEPTED:**

**CRE Niagara Participation Holdings, LLC**
By: CRE Bushkill Group, LLC, its Managing Member

By:_____
Name: J. Richard Budd
Title: Chief Executive Officer


**CRE Bushkill Group, LLC**

By:_____
Name: J. Richard Budd
Title: Chief Executive Officer


**Resorts Group, Inc.**

By:_____
Name: W. Andrew Worthington
Title: President