# EXHIBIT E

<u>**Second Supplemental Agreement**</u> dated this *4TH* day of July , 2019 ("**Effective Date**"), by and among the following parties: CRE Niagara Participation Holdings, LLC (known hereinafter as "**CRE**"), CRE Bushkill Group, LLC (known hereinafter as "**CRE BG**"), and Resorts Group, Inc. (known hereinafter as "**RGI**"). RGI, CRE and CRE BG are hereinafter referred to as the "**Parties**". Capitalized terms used herein but not otherwise defined shall have their respective meanings as set forth in the Participation Agreement (as defined below), the Servicing Agreement (as defined below), and the Supplemental Agreement (as defined below) as applicable.

**WHEREAS**, the Parties hereto have previously executed and remain bound by the following:
i.   "**Participation Agreement**" dated as of May 18, 2017, by and between RGI and CRE BG, a copy of which is attached hereto and incorporated herein;
ii.  "**Servicing Agreement**" dated as of May 18, 2017, by and between RGI and CRE BG, a copy of which is attached hereto and incorporated herein; and
iii. "**Supplemental Agreement**" dated December 28, 2018, by and among RGI, CRE and CRE BG, a copy of which is attached hereto and incorporated herein.

**WHEREAS**, it is the intent of the Parties that this Second Supplemental Agreement shall be incorporated into the terms and conditions of the three previously-executed Agreements enumerated above each an "**Agreement**" and all four together known as the "**Agreements**");

**WHEREAS** Club Exploria, LLC is duly authorized to make the warranties with respect to the obligations contained in Section 4 herein. Notwithstanding the foregoing, the Parties expressly acknowledge that the warranties made in Section 4 are limited solely to the purposes defined therein and that Club Exploria, LLC is not becoming a party to the Agreements.

**WHEREAS** CRE and CRE BG have requested that, pursuant to the terms and conditions of the Hypothecation Loan and Security Documents, RGI borrow and secure a Hypothecation Distribution Advance of Six Million Dollars ($6,000,000) from Western Alliance Bank ("**WAB**") which shall be secured by WAB's lien on and security interest in the Timeshare Contracts and Fairway Contracts for Deed, (together known hereinafter as the "**Participation Portfolio**"), and which shall constitute a Hypothecation Distribution Advance, as defined within and governed by the Participation Agreement (the "**Second CRE HDA**").

**WHEREAS** the Participation Agreement provides that the Holder is entitled to receive from RGI fifty percent (50%) of any Hypothecation Distribution Advance Proceeds, which proceeds when paid to or for CRE as the Second CRE HDA shall reduce the Participation Limit set forth in the Participation Agreement dollar-for-dollar, in the amount of $3,000,000.

**NOW THEREFORE**, for good and valuable consideration, including but not limited to RGI paying the Second CRE HDA to CRE as provided herein, all the Parties hereto agree as follows:

1. In the event that WAB does not fund the Second CRE HDA, then the foregoing shall not apply and this Second Supplemental Agreement shall be rendered null and void.

2. To provide clarification between the Parties that Non-Performance Fees were intended to be paid for each weekly Timeshare Interest listed in a Non-Performing Timeshare Contract (as compared to payment for each Non-Performing Timeshare Contract):

   a. Section 5.4(a) of the Participation Agreement is hereby amended in part by adding the following language in italics to the first part of the third sentence in this Section 5.4(a): " . . .Holder agrees to pay RGI any Non-Performance Fee in respect *to each weekly Timeshare Interest* of a Non-Performing Timeshare Contract . . .", and

   b. Section 5.5 of the Participation Agreement is hereby amended in part by adding the following language in italics to the first part of the third sentence in Section 5.5(iii): ". . . and (iii) Holder pays to RGI the Non-Performance Fee *for each weekly Timeshare Interest* in respect of such conveyance. . . "

   c. For the avoidance of doubt, any reference to "Timeshare Interest" in the Participation Agreement shall be construed to mean one (1) seven-day, weekly annual timeshare interval. By way of example, if one (1) weekly Timeshare Interest with use rights every other year (or a "Biennial Timeshare Interest") secures a Non-Performing Timeshare Contract while the Holder's Ownership Percentage is greater than 0%, then the Non-Performance Fee shall be $175; and if ten (10) weekly Timeshare Interests with use rights every year secure a Non-Performing Timeshare Contract after the Holder's Ownership Percentage is 0%, then the Non-Performance Fee shall be $5,000.

3. In order to resolve a dispute between the Parties concerning historical payment of Non-Performance Fees, the Parties agree that RGI shall deduct $78,925 from CRE's portion of the Second CRE HDA. Accordingly, the Parties agree that the net proceeds retained by RGI from the Distribution Advance shall be $3,078,925; and the net proceeds paid to CRE from its $3,000,000 shall be $2,921,075. Upon RGI's deduction of the aforementioned $78,925, RGI shall effectively waive all claims, suits or damages relating to historical payment of Non-Performance Fees.

4. CRE and CRE BG together agree that, upon receipt of $2,921,075 in net proceeds from their $3,000,000 Second CRE HDA, they shall not increase maintenance fees at Poconos Mountain Villas, keeping them at the present rates for the fiscal year 2020, and

page 2 of 5

they shall not impose any special assessment for the fiscal year 2020. For the avoidance of doubt, no consumer that is party to a Timeshare Contract or Fairway Contract for Deed will have any increase in their maintenance fee billing for the fiscal year 2020, or will be charged for any special assessment for the fiscal year 2020. For the avoidance of doubt, the fiscal year referenced throughout this Section 4 ends December 31, 2020. Club Exploria, LLC warrants the performance of CRE and CRE BG with respect to the foregoing provision only.

5.  No Party shall pay or reimburse any other Party for costs or expenses incurred in connection with the drafting, negotiating or review of this Second Supplemental Agreement, including but not limited to legal fees, accounting fees, wages and consultant fees.

6.  On the date when each CRE HDA is paid to CRE, RGI shall provide to CRE the percentage equal to: [the then outstanding WAB Hypothecation Loan Balance attributable to the total CRE HDA] *divided by* [the then outstanding WAB Hypothecation Loan Balance]. This percentage shall determine the portion of the WAB Hypothecation Loan Interest attributable to the CRE HDA, and shall be known thereafter as the " **CRE HDA Interest Percentage**". Until the date upon which RGI's WAB Loan arising from the Hypothecation Loan and Security Documents is repaid in full, CRE shall reimburse RGI monthly in arrears for the interest RGI actually pays to WAB in the previous month that is attributable to the total CRE HDA, as follows: [Total Interest Paid by RGI to WAB under the terms and conditions of the Hypothecation Loan and Security Documents during each month] **multiplied by** [the CRE HDA Interest Percentage]. Prior to making such application, RGI shall provide to CRE satisfactory written evidence of such interest that RGI actually paid to WAB in the previous calendar month, following which CRE then shall pay the requisite amount to RGI.

For clarification purposes, the then outstanding WAB Hypothecation Loan Balance attributable to the total CRE HDA would be the amount equal to: (i) the remaining unamortized principal balance of the $1,500,000 first CRE HDA that was received by CRE on December 28, 2018 [on the day CRE receives or as of the month end prior to] the Second CRE HDA plus (ii) the amount of the Second CRE HDA that is received by CRE pursuant to this Second Supplemental Agreement.

The Parties hereby agree to keep this Second Supplemental Agreement confidential, until and unless any material dispute should arise among or between the Parties in connection therewith, at which time the Parties may disclose this Second Supplemental Agreement in connection with any court proceeding arising in connection with such material dispute (or at such other time and in such other manner as all Parties may

otherwise agree). The Parties acknowledge that any violation of the foregoing by anyParty could cause continuing and irreparable harm to the non-violating Party or Parties, for which monetary damages may not be adequate compensation. All the Parties therefore agree that if any Party violates or threatens to violate any of the restrictive covenants in this paragraph, the damaged Party or Parties shall be entitled, in addition to any other legal or equitable remedies available, to entry of an injunction, temporary and permanent, enjoining such breach and securing specific performance of this paragraph. Notwithstanding the foregoing, the Parties shall be permitted to disclose this Second Supplemental Agreement to their affiliates and their respective professional advisors, and to their lenders and investors, as is necessary or appropriate to carry on their business, to comply with their obligations under the Servicing Agreement and/or the Participation Agreement, as required by applicable law, judicial process or court order or as required, requested or advisable to be provided to any Governmental Authority, and to current, future or potential lenders, investors, underwriters, rating agencies or potential purchasers

7. Except as modified by this Second Supplement Agreement, the Participation Agreement, the Servicing Agreement, and the Supplemental Agreement shall remain unchanged and shall continue in full force and effect. In the event that there is any conflict between the terms of the Participation Agreement, the Servicing Agreement, or the Supplemental Agreement and this Second Supplemental Agreement, the terms specifically set forth in this Second Supplemental Agreement shall control. From and after the Effective Date, any and all references to the Participation Agreement, the Servicing Agreement, or the Supplemental Agreement shall mean these agreements as modified by this Second Supplemental Agreement.

8. This Second Supplemental Agreement may be signed in any number of counterparts (including by facsimile or other electronic signature), each of which shall be an original, with the same effect as if the signatures were upon the same instrument.

## (SIGNATURES FOLLOW ON NEXT PAGE)

*Second Supplemental Agreement* between CRE/CRE BG and RGI  -  EXECUTION ORIGINAL

**AGREED AND ACCEPTED:**

**CRE Niagara Participation Holdings, LLC**
By: CRE Bushkill Group, LLC, its Managing Member
By: _____
Name: Phil Davis
Title: Chief Financial Officer

**CRE Bushkill Group, LLC**
By: _____
Name: Phil Davis
Title: Chief Financial Officer

**Resorts Group, Inc.**
By: _____
Name: W. Andrew Worthington
Title: President

**ACKNOWLEDGE LIMITED WARRANTY (Section 4 only):**

**Club Exploria, LLC**
By: _____
Name: Phil Davis
Title: Chief Financial Officer

*Second Supplemental Agreement* between CRE/CRE BG and RGI  -  EXECUTION ORIGINAL